# Gray and Wife *vs* Bate's Executrix, &c.

ERROR TO THE LOUISVILLE CHANCERY COURT.

*Construction of agreements.   Annuity.   Interest.*

CHIEF JUSTICE MARSHALL delivered the opinion of the Court.

CHANCERY.

*Case* 144.

*September* 25.

Statement of the terms and object of the deed of trust constituting the basis of the controversy and the bill.

IT seems to this Court, that the provision for the benefit of John T. Bate, in the deed of trust of May, 1835, from the heirs and devisees of his father, James S. Bate, to their mother, Lucy M. Bate, the executrix of her husband, was founded upon his equity, real or supposed, to be compensated for the loss of the Mount Merino estate, devised to him by his father, as of the value of $15,500, being the same as the estimated value of the advances and devises to each of the other children. The will itself provides for making up out of the undevised residue of the estate, any loss which might be sustained in the portions devised, by a better claim. And if the terms of this clause should even be deemed inapplicable to a loss occasioned by the testator's alienation after the date of the will, of the estate devised to one of his children, the compensation for such a loss was entirely consonant with its spirit, and especially with the obvious intention of the testator to produce perfect equality among his children.

The Mount Merino estate then, having been devised to John T. Bate, with the option at the death of his mother, of taking, in lieu of it, the 500 acres which were devised to G. B. Bate during his mother's life, in which case the Mount Merino estate would fall into the

GRAY AND WIFE
       vs
BATE'S EX'X. &C.
residuum; the alienation of that estate, without any alteration in the will, left J. T. Bate without any provision during the life of his mother, or until one should be made for him out of the undevised residuum of his father's property. The will directed that all debts should be paid out of the undevised estate, so as not to affect the devises. And the deed of trust made a few months after the probate of the will, authorizes Mrs. Bate, the executrix and trustee, to sell any of the undevised lands for payment of debts, and after providing that she may, through an agent, ascertain the responsibilities and the assets of the estate, appoints two commissioners to divide the estate of said James S. Bate among all his children, after such parts thereof as said Lucy may think will constitute an adequate fund to meet all the demands against it, have been set apart by her for that purpose, taking the value of advances and devises as fixed in the will, and considering the 500 acres devised to G. B. Bate until the death of his mother, but not estimated in the will as of the value of $15,500.

"And the parties further agree, that as John T. Bate cannot enjoy the devise to him until the death of Mrs. Lucy M. Bate, that the said commissioners shall set apart a fund of $15,500, the interest of which shall be paid to said John T. Bate, until the death of Mrs. Bate, at which time the said John may elect to retain the said $15,500 or to take the 500 acres of land, the profits of which have been devised to Gerard Bond Bate until that period, according to the provisions of the will aforesaid." It is provided further, that nothing in the deed shall be understood to impair the rights of creditors of the estate, nor to abridge the powers of said Lucy as executrix, nor to cast on her as such, any additional responsibility. And she covenants that she will hold the estate subject to the uses stated, and that after the debts are paid or funds deemed sufficient by her, set apart for that purpose, she will convey or assign to the children of James S. Bate, according to the allotment by the said commissioners. John T. Bate covenants that in case the said sum of $15,500, or any part of it, shall be paid to him, he will give such security as may

be required, for repaying it to the estate at the death of his mother. And it is further declared, that in the division of the estate, no party is to be deprived of the estate received by advance or devise under the will, and that no other value shall be affixed thereto, than that contained in the will; and further, that the sum of $15,500, to be set apart as aforesaid, or the 500 acres in lieu of it, and the reversion in the slaves devised to Mrs. Bate for life, and all other estate of James S. Bate other than that advanced or received by devise, or divided before that period, shall, at the death of Mrs. Bate, be equally divided between the children of said James S. Bate or their heirs.

No specific portion of the estate was, at any time, set apart by Mrs. Bate as a fund sufficient for the payment of all the debts, but she has proceeded, from time to time, to pay them, by sales of land and otherwise, until in 1847, or before that time, all which are known have been discharged. The commissioners named in the deed have not acted, nor has any specific fund of $15,500 been raised or set apart for the benefit of John T. Bate, nor any division of the undevised estate been made among the heirs, except as to a portion of the slaves. But Mrs. Bate, the executrix and trustee, paid to John T. Bate, about one year after the execution of the deed of trust, $930, as one year's interest on the sum of $15,500. And in 1846, after the termination of a suit in chancery in which Gray and wife, as complainants, (the latter being one of the children and heirs of James S. Bate,) had assailed and attempted to set aside the will and deed, had been decided in favor of these instruments, she paid to him the arrearages of interest at the same rate, making in the aggregate, a sum of $9,300, for which she claims a credit in her accounts with the heirs.

In 1847, Gray and wife filed the present bill against Mrs. Bate and the heirs of J. S. Bate, praying for an account, and settlement, and division. They object to these payments to John T. Bate, as not properly chargeable against the estate, because the fund of $15,500 had not been raised or set apart, and there was no portion

GRAY AND WIFE
*vs*
BATE'S EX'X. &c. of the estate yielding an annual profit or interest equal to the interest of that sum; and they pray that said fund of $15,500 may be now set apart, &c. Mrs. Bate says there were large portions of the estate in her hands bearing interest, that she was advised to consider the whole estate as a fund for the payment of John T. Bate, that the sums paid him were justly due by the agreement of the heirs in the deed of trust; and that the delay in setting apart the fund of $15,500, was owing to the suits brought by the complainants, first for a division of the slaves, &c., and then for vacating the will and deed of trust. John T. Bate claims that the interest on the sum of $15,500, was due to him annually, and that he is entitled to interest upon these annual sums from the time they were respectively due until paid. The other heirs, except Washington and wife, admit the credits claimed by Mrs. Bate. And the Court having overruled the exceptions to these and a few other credits in the account of Mrs. Bate, and having, by its decree, declared a large balance in her favor, Gray and wife prosecute a writ of error confining their objections in this Court, to the credits for payments to John T. Bate; and John T. Bate assigns cross errors, complaining that interest was not decreed to him for delay in payment of the interest on $15,500, claimed to have been due to him annually, from 1836 to 1846, and since.

The ground assumed by plaintiffs in error.

The principal grounds assumed for the plaintiffs in error, seem to be: First, That by the terms of the deed of trust, upon fair construction, John T. Bate was entitled to nothing until the fund of $15,500 was set apart, and that this has not been, and could not be done, because the fund for payment of debts was not set apart; and, Second, That if the setting apart of the fund was not strictly a condition precedent, yet as it was evidently intended that the annual interest or sum payable to him, should not be paid out of the principal, but out of the profits of the estate, or some portion of it, so that when the annuity should cease on the death of Mrs. Bate, the principal sum should return to the estate or constitute J. T. Bate's portion of $15,500, the effect of the payment of the whole or any part of the annuity

out of the principal of the estate, is to throw a loss upon the heirs which they ought not to bear. But the essence of the agreement contained in this part of the deed is, that John T. Bate should either have $15,500 from the estate, subject to be refunded at the death of his mother, or that he should receive the interest of that sum until that time. The raising or setting apart of the fund by commissioners or otherwise, was but a convenient and proper mode of securing the object as all desired it to be done, without loss to the estate.

It is not made the duty of Mrs. Bate to set apart a a portion of the estate deemed sufficient for the payment of debts. She is only authorized to do it. And although this act on her part, is made a condition precedent to the division to be made among the heirs by the commissioners, the setting apart the fund of $15,-500, is required of them without condition. No doubt seems, at any time, to have been entertained of the sufficiency of the estate to pay the debts and raise the fund of $15,500, leaving still a surplus for the heirs. And although the surplus for division could not have been ascertained until the debts were paid or a portion of the estate appropriated to that object, no such step was requisite to the raising or setting apart of the specific fund of $15,500, which would leave ample means for the payment of debts.

Where parties interested in an estate agreed to set apart a fund out of the residuum thereof, the interest of which was to be paid to one party until the death of his mother, (to whom the estate devised to such party had been given for life, in lieu of such estate,) if the undevised residuum was sufficient, after the payment of debts to raise that fund, it should have been forthwith set apart and the interest annually paid, but not interest upon such interest.

By the clause of the deed already quoted, the parties agree that the commissioners (who had been before named,) shall set apart a fund, &c. In the reason given for this requisition, and in the declared purpose to which the fund is to be devoted, it is clearly shown that the fund is to stand in the place of the devise to J. T. Bate until his mother's death, and that until that time he is to enjoy the interest of it in lieu of the devise, that is, of the profits of the Mount Merino estate. As, or because he cannot enjoy the devise, it is agreed that the commissioners shall set apart a fund equal to it in value, the interest of which is to be enjoyed by him. This provision, implying a recognition of a right on his part, and of a corresponding duty on the part of the other heirs, was intended to place him, by an appropriation from the

residuary estate, substantially on the same footing of equality with the others, as the will itself had done. There was no necessity for waiting until there should be a general division before this should be done. On the contrary, the fund must be set apart before the residuum to be divided could be ascertained. There was no obstacle to the immediate execution of the provision. Its motive and object, as well as its terms, required that it should be executed at once in convenient time, and show, therefore, that it was intended to take effect from the date of the deed, so as to secure from that period, the benefit which it intended to provide.

The substance of the thing is, that on considerations which are not now to be questioned, the other heirs agree that a fund of $15,500 shall be raised, or set apart out of the residuary estate, of which the annual interest is to be received by John T. Bate. The effect of the agreement is, in our opinion, to entitle him, as against the residuary estate not required for payment of debts, and against those interested in it, to have either the fund of $15,500, or its interest from the date of the deed. And if the raising of the fund as the mode of performance most beneficial to the heirs was an essential part of the agreement, still the duty of resorting to that mode was incumbent upon them rather than him, not only because it was for their benefit, but more especially because it was a mode agreed on for the performance of an admitted duty on their part. We are satisfied, therefore, that the right of John T. Bate to have the annual interest of $15,500, did not depend for its commencement, upon the raising or setting apart of the fund for producing it, but that it existed as a charge upon the estate under the deed and agreement of the parties, and that the loss, if any, which might arise from the omission to raise a fund producing annual profits for its payment, should fall upon those interested in the residuary estate from which it was due, and not upon John T. Bate alone.

The exhibits and statements contained in the record before us, do not enable us to ascertain precisely the extent to which the payments made by Mrs. Bate to

John T. Bate, have been made from the principal, or from the profits of the estate. But Mrs. Bate has paid, in discharge of this and other demands, more than the amount of pecuniary funds, or personalty, which have come to her hands, the balance in her favor being about one half of the sums paid to J. T. Bate. If she had paid nothing to him, he would now be entitled to the aggregate amount of the annual interest on $15,500 from the date of the deed to the present time, which, if there were no productive fund, from the profits of which it could be paid, would have to be raised from the principal or body of the estate, which would still have to furnish the fund of $15,500, for raising the future annual interest to be paid to John T. Bate until the death of his mother. And as Mrs. Bate, in the payments made, has paid so much of an actual debt coercible under the deed, there is no ground for refusing to credit her by the whole amount paid, unless the failure to provide a fund producing interest for the annual payments, and the loss to the estate consequent upon that failure, be wholly attributable to her default or mismanagement. But for this there is no ground laid in this record. It was not made her duty by the deed, to set apart the $15,500, nor was her co-operation any further necessary, than as it may have been required in the progress of raising the fund by those who might be engaged in it. It would have been an officious interference in her to do an act which the parties concerned had expressly entrusted to others. And though she might have done it, yet as all proceedings under the deed were for a large portion of the time which has elapsed since its date, obstructed or prevented by the proceedings of the complainants themselves, tending to disturb and to defeat the entire arrangement, we think the complainants especially are without any reasonable pretext for throwing upon her the loss which may have accrued from the failure to set apart a specific fund, and which at last will be shared with them by the other heirs, and by John T. Bate himself, whose portion in the residuum will be proportionably diminished by the appropriation

RICHARDSON
vs
BLEIGHT'S H'RS.

of the principal of the estate to the payment of his claim of interest.

There was no error, therefore, in allowing these credits to Mrs. Bate. And although John T. Bate did not lose his right to the interest of $15,500 by the failure to provide a fund which should produce it annually, yet as that failure and the consequent loss to the estate was in part attributable to him as well as to the other parties, and as there is no express stipulation to pay him the interest, or any certain sum annually, we think he is only entitled to the aggregate of the unpaid annual interest, without any charge of interest upon interest, which is rarely allowed by the Chancellor where the case rests upon mere equity, or is within the discretion of the Court.

Wherefore, the decree is affirmed, upon the original and cross errors.

*Pirtle and A. Harris* for plaintiffs; *Guthrie and Tyler* for defendants.